## CIRCUIT COURT OF LANCASTER COUNTY

John M. Townes, III,
and Meredith P. Townes

v.

Printess Cheryl Norman et al.

April 16, 1990

Case No. (Chancery) 57-1988

By JUDGE JOSEPH E. SPRUILL, JR.

We are asked in this phase of this proceeding to decide what reimbursement and/or restitution, if any, John M. Townes, III, and Meredith P. Townes (Townes) are entitled to as a result of a contract signed by them with Printess Cheryl Norman, Guardian of James T. Boston, then *non compos*, for the purchase of Mr. Boston's land.

On February 11, 1988, the guardian instituted suit in this Court for leave to sell the subject property. On February 29, 1988, all defendants named in the suit, presumably the children of James T. Boston, answered and opposed the sale. On April 27, 1988, the guardian signed a contract with Townes to sell them the property for $26,000. Mr. Boston died on June 21, 1988.

We have previously held the Townes contract was rendered unenforceable upon the death of Mr. Boston.

Upon signing the contract, Townes expended various sums presumably in reliance upon its validity and enforceability. Because they knew, or should have known, that the contract was not binding until confirmed by the Court and because they knew, or should have known, that upon the death of Mr. Boston, the contract was unenforceable,

Townes must be deemed to have known that these expenditures entailed some risks.

The contract of April 27, 1988, was not void *ab initio*. It could have been confirmed by the Court and perhaps would have been had Mr. Boston survived. Notwithstanding the fact that at the time the contract was signed, Townes knew Mr. Boston was *non compos* and all of the defendants in the suit, being Mr. Boston's children, opposed the sale, Townes appears to have acted in good faith. There is no evidence of overreaching. The person with whom the Townes were dealing was not under mental disability. They contracted with the guardian duly appointed by the Court to manage the affairs of Mr. Boston. In this important respect, this case can be contrasted with the cases cited by counsel, namely *Edmunds v. Chandler*, 203 Va. 772 (1962), and *Upton v. Hall*, 225 Va. 168 (1983). In each of these cases, a party to the contract was operating under a disability. Nevertheless, we find that the *ratio decidendi* of these cases is applicable here. We find that Townes should be placed *in status quo*.

*In status quo*, pursuant to case law, requires that the purchasers be restored to the same position they were in at the time of the execution of the contract. Absolute and literal restoration is not required. Restoration that is reasonably possible and demanded by the equities of the case is enough. All monies necessarily, properly, and judicially expended in good faith, must be repaid. Only such expenditures as were incident to this contract need be repaid. Extraneous and entirely disconnected expenditures are not required to be repaid. *Edmunds v. Chandler, supra.*

Plaintiffs have requested payment for the enhancement in value of the property as a result of rezoning. Prior to rezoning, plaintiffs claim, the property was worth $26,000, the contract amount. After rezoning (to C-1) its value, claim plaintiffs, is $87,200. Therefore, because the increase of $61,200 is solely attributable to their efforts, Townes asks for judgment for this amount. This would require the Court to give Townes the benefit of a contract it has previously held to be unenforceable. Further, not only is the enhancement in value speculative, there is an important distinction between enhancement

in value resulting from rezoning and that resulting from improvements made at purchasers' expense.

What then is required to place plaintiffs *in statu quo*? Plaintiffs have listed items for which they seek reimbursement. The contract deposit of $500 obviously should be returned to plaintiffs, but it is represented that this was deposited with the real estate agent and plaintiffs should look there to recover this item. The cost of the septic tank application ($75), the rezoning application ($80), and copying ($7) will be allowed. Plaintiffs claim $2,000 reimbursement for their time devoted to this enterprise. This item does not represent "monies necessarily expended." However, it is obvious plaintiffs have devoted substantial time and some out-of-pocket expense in their quest to obtain this property, and the Court believes that some compensation is due them by the equities of the case. Therefore, we will allow $1,000 to plaintiffs for this item. Legal fees of $3,114.90 appear reasonable and will be allowed. Appraisal fees of $1,700 appear somewhat excessive under the circumstances but will be allowed on the assumption they have been paid or will be paid in good faith by plaintiffs. Accordingly, the Court will grant judgment in favor of plaintiffs against defendants in the sum of $5,976.90. This judgment will be a lien against the subject property, next in priority to other secured creditors of the estate.